George T. Altman, Beverly Hills, Cal., for plaintiffs.

Manuel L. Real, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Division, Robert T. Jones, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

**William MALAT and Ethel Malat, Plaintiffs,**

v.

**Robert A. RIDDELL, District Director of Internal Revenue, Defendant.**

**Civ. No. 63-169.**

United States District Court
S. D. California,
Central Division.

May 6, 1966.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CRARY, District Judge.

The above-entitled cause having come before the Court on remand from the Supreme Court for new findings, and the Court, having considered the pleadings, briefs and evidence both oral and documentary, and having rendered its oral opinion now finds as follows:

1. This is an action for refund of Internal Revenue taxes, which action arises under Title 26 U.S.C. Section 7422 and Title 28 U.S.C. Section 1340.

2. Plaintiffs, William Malat and Ethel Malat, are and were during the material periods pertinent hereto, citizens of the United States and residents of the County of Los Angeles in the Central Division of the Southern District of California.

3. Plaintiffs, as husband and wife, timely filed their joint Federal income tax return for the taxable year 1956 with the District Director of Internal Revenue at Los Angeles, California, and paid taxes

shown on the said return in the amount of $42,341.47.

4. On December 18, 1959, plaintiffs were assessed a deficiency in Federal income tax for the taxable year 1956 in the amount of $4,905.61 together with interest thereon. On February 17, 1960, plaintiffs paid said deficiency assessment plus interest, or a total of $5,531.41. On June 8, 1961, plaintiffs duly filed a timely claim for refund of a portion of the aforesaid deficiency, the refund so claimed being $1,231.22. Said claim for refund was disallowed by statutory mail notice sent on July 12, 1962. On March 5, 1963, within two years after said disallowance, plaintiffs timely filed their complaint herein for refund of tax in the amount of $1,231.22 (the amount of their claim which had been disallowed), together with interest thereon.

5. Plaintiff William Malat was, at all times pertinent to this case, a general partner of Louis Lesser Enterprises, Ltd., a partnership (hereinafter referred to as "Lesser"). Lesser was in the real estate business and had substantial activities in real estate, both as a renter and seller, during the year in issue.

6. On August 12, 1953, Lesser and four individuals—Maxwell J. Fenmore, Carl N. Hicks, Sidney Rogen, and Herman C. Millman (each of said individuals hereinafter referred to by his respective last name)—organized Century Crenshaw Plaza, a joint venture (hereinafter referred to as "Plaza"). Each member of Plaza had a twenty percent interest in capital and profits and losses. The original contributions to Plaza by its members consisted of cash.

7. This case presents the question as to whether gains from the sales during 1954 by Plaza of certain real property constituted ordinary income or capital gain. The plaintiffs contend that the subject property constituted "capital assets" as defined in Section 1221 of the Internal Revenue Code of 1954. The defendant contends that the subject property was excluded under Section 1221(1) from the term "capital assets" for the

reason that it was property held "primarily for sale to customers in the ordinary course of trade or business" or in the alternative because it was held for sale-or-rental as an integral part of taxpayer's business.

8. Prior to the organization of Plaza, Lesser and the other members of Plaza had negotiated for the acquisition of a 44.901 acre parcel of real estate known as Timothy-Riordan Ranch, located at Century and Crenshaw Boulevards, Inglewood, California. On or about August 12, 1953, Plaza opened an escrow for the purchase of said property for the sum of $486,000.00. On February 15, 1954, the escrow was closed upon the acquisition by Plaza of the said property.

9. The entire 44.901 acre parcel was fronted on the north by Century Boulevard and on the east by Crenshaw Boulevard, but it did not include the approximate 600 feet by 600 feet parcel at the southwest corner of the intersection of Century and Crenshaw Boulevards. The excepted corner parcel was retained by the sellers of the 44.901 acre parcel.

10. Prior to the date on which the escrow opened for the acquisition by Plaza of the said property, the entire 44.901 acres, together with the corner retained by the sellers, was zoned for agricultural purposes as "A–1". Among the several conditions precedent to the closing of the escrow were two related to zoning. One such condition was that the 44.901 acre parcel be rezoned from "A–1" to multiple residential "R–3"; the other such condition was that the corner lot retained by the sellers be rezoned from "A–1" to commercial "C–2". Both zoning changes were effected prior to the escrow closing on February 15, 1954.

11. The venturers realized that they had made a good purchase price-wise and, if they were unable to obtain acceptable construction financing or rezoning from "R–3" to "C–2" which would be prerequisite to commercial development, they would sell the property in bulk so they wouldn't get hurt. The purpose of first

importance of the members of Plaza of holding the property was to develop and hold it for rental.

12. One of the possibilities for developing the property was a multiple residential project on the entire property. However, such a project was contingent upon the obtaining of financial guarantees by the Federal Housing Administration, which guarantees could not be secured on terms acceptable to the Plaza venturers.

13. The members of Plaza also gave some consideration to the development of the frontage property along Century and Crenshaw Boulevards, respectively, commercially and the remainder of the property into a multiple residential project. However, the venturers were unable to obtain conventional financing necessary to build apartments upon terms which would make such construction possible. In addition, they could not secure a zoning change from "R–3" to "C–2" with respect to the boulevard frontage property.

14. Plaza subdivided 24.646 acres (hereinafter referred to as "Tract 19705") into 105 lots. It improved the said subdivision by grading, putting in streets and curbs, and installing water and sewage facilities. Tract 19705 constituted the "inner portion" of the property which comprised in total the 44.901 acres in the sense that the said tract did not itself front either on Century Boulevard or on Crenshaw Boulevard.

15. On April 26, 1954 (approximately two months after the closing of escrow upon the acquisition of the 44.901 acre parcel) Plaza distributed Tract 19705, subject to liens and encumbrances of record, to the venturers as equal tenants in common. On May 26, 1954, the distributees transferred Tract 19705, subject to said liens and encumbrances, to Century Crenshaw Properties, a joint venture (hereinafter referred to as "Properties"). The members of Properties were Lesser, Rogen, Millman, Espada Properties, Inc., and Hicks Properties, Inc. Fenmore was the controlling stock-

holder of Espada Properties, Inc., a California corporation, and Hicks was the controlling stockholder of Hicks Properties, Inc., a California corporation. Each member of Properties had a twenty percent interest in capital and profits and losses.

16. Plaza allocated the total cost basis of the 44.901 acres, $486,000.00 to Tract 19705, $266,765.40, and to the frontage parcels retained by Plaza, $219,234.60.

17. Properties sold the 105 lots of Tract 19705 and reported the gains from the sale thereof as ordinary income. The members of Properties likewise reported their distributive shares of the said gains as ordinary income in their respective Federal income tax returns. There is no issue herein with respect to the manner of reporting such gains.

18. Subsequent to the acquisition of the 44.901 acres in February, 1954 and the failure of the members of Plaza to obtain rezoning or acceptable financing, a rift arose among the partners of Plaza with Lesser, Rogen and Millman on one side and Hicks and Fenmore on the other. The rift resulted in acrimony which made further business relations as partners unpleasant.

19. On or about October 15, 1954 (eight months after the acquisition by Plaza of the 44.901 acres), Plaza, out of the 20.255 acres retained after the distribution of Tract 19705, sold nine plus acres fronting on Century Boulevard to Hicks-Fenmore Development Company, a partnership, for $123,781.10. The said partnership was comprised of Hicks, Fenmore and two corporations controlled by Hicks and Fenmore, respectively.

20. On or about November 5, 1954 (within nine months after the acquisition by Plaza of the 44.901 acres), Plaza sold the property then owned by it, being 10.9 acres fronting on Crenshaw Boulevard, to one George Ponty, a real estate developer and associate of Hicks, for $222,-800.00. This was the final sale out of the 44.901 acres which Plaza had acquired.

21. Gains from the said sales by Plaza of the said 20.255 acres were reported as long-term capital gains for the fiscal years 1955, 1956 and 1957 on the returns of Plaza. Derivatively, the members of Plaza and, in turn, plaintiffs herein, reported such gains as long-term capital gains. The defendant contends that such gains were subject to Federal income tax at ordinary income rates.

And from the foregoing, the Court concludes as follows:

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter herein and the parties hereto.

2. In view of the opinion of the Supreme Court on appeal of our decision in the first trial of this case, our sole duty here, on remand, is to determine if the property was or was not held primarily for sale to customers in the ordinary course of taxpayer's trade or business.

3. The Court is not ruling on whether or not the character of holding the subject properties or their classification as a capital asset is to be influenced by the character of holding the interior parcel.

4. The statute involved herein, Section 1221 of the Internal Revenue Code of 1954, is a relief provision and must be strictly construed. Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 265, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958); Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 52, 76 S.Ct. 20, 100 L.Ed. 29 (1951).

5. Plaintiffs have established by a preponderance of the evidence that the subject real properies were not held by Plaza primarily for sale to customers in the ordinary course of trade or business.

6. Plaintiffs herein were entitled to report the subject gains as gains from the sale of capital assets.

Judgment shall be entered accordingly.